**BRIAN T. DUNN, ESQ. (SBN 176502)**
Email: bdunn@cochranfirm.com
**EDWARD M. LYMAN, ESQ. (SBN 248264)**
Email: elyman@cochranfirm.com
**TIMAIAH SMITH, ESQ. (SBN 333587)**
Email: tsmith@cochranfirm.com
**THE COCHRAN FIRM CALIFORNIA**
4929 Wilshire Boulevard, Suite 1010
Los Angeles, California 90010
Telephone: (323) 435-8205
Facsimiles: (323) 282-5280

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK TYRONE BEASLEY, individually<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF LOS ANGELES; a municipal entity; CAREN MANDOYAN; SEAN KUSIAK; and DOES 1 through 10, inclusive,<br><br>Defendants. | **COMPLAINT FOR DAMAGES**<br><br>1. **DEPRIVATION OF CIVIL RIGHTS, 42 U.S.C. §1983, FABRICATION OF EVIDENCE;**<br><br>2. **DEPRIVATION OF CIVIL RIGHTS 42 U.S.C. §1983, *BRADY VIOLATIONS***<br><br>3. **DEPRIVATION OF CIVIL RIGHTS 42 U.S.C. §1983, *MONELL VIOLATIONS*, COUNTY OF LOS ANGELES**<br><br>**DEMAND FOR JURY TRIAL** |

## JURISDICTION AND VENUE

1. Jurisdiction is vested in this court under 28 U.S.C. § 1343(3)-(4) for violations of the 1871 Civil Rights Enforcement Act, as amended, including 42 U.S.C. § 1983 and 28 U.S.C. § 1331.

2. Venue is proper in the Central District of California under 28 U.S.C. §

1

1391(a)-(b).

**PARTIES**

3. Plaintiff MARK TYRONE BEASLEY is, and at all relevant times mentioned herein was, a resident of the County of Los Angeles and State of California.

4. Defendant COUNTY OF LOS ANGELES (hereinafter "COUNTY") is, and at all relevant times mentioned herein was, a municipal entity or political subdivision of the United States, organized and existing under the laws of the State of California.

5. Plaintiff is informed and believes, and thereon alleges, that Defendant CAREN MANDOYAN is, and at all relevant times mentioned herein was, a resident of the County of Los Angeles and State of California, at all times relevant to the acts and omissions herein alleged, said Defendant CAREN MANDOYAN was a sworn peace officer and Sheriff's Deputy employed by the Defendant Los Angeles County Sheriff's Department, and was acting under color of state law and in the course and scope of his employment with the Defendant COUNTY and the Sheriff's Department.

6. Plaintiff is informed and believes, and thereon alleges, that Defendant SEAN KUSIAK is, and at all relevant times mentioned herein was, a resident of the County of San Los Angeles and State of California, at all times relevant to the acts and omissions herein alleged, said Defendant SEAN KUSIAK was a sworn peace officer and Sheriff's Deputy employed by the Defendant Los Angeles County Sheriff's Department, and was acting under color of state law and in the course and scope of his employment with the Defendant COUNTY and the Sheriff's Department.

7. Plaintiff is unaware of the true names and capacities of those Defendants named herein as DOE Defendants. Plaintiff will amend this Complaint to allege said Defendants' true names and capacities when that information becomes known to her. Plaintiff is informed, believes, and thereon alleges that these DOE Defendants are legally responsible and liable for the incident, injuries, and damages hereinafter set forth, and that each of said Defendants proximately caused the injuries and damages by reason of negligent, careless, deliberately indifferent, intentional, wilful, or wanton

2

misconduct, in creating and otherwise causing the incidents, conditions, and circumstances hereinafter set forth, or by reason of direct or imputed negligence or vicarious fault or breach of duty arising out of the matters herein alleged. Plaintiff will seek leave to amend this Complaint to set forth said true names and identities of the unknown named DOE Defendants when they are ascertained.

8. Each of the individual Defendants sued herein is sued both in his individual and personal capacity, as well as in his official capacity.

9. Plaintiffs are informed, believes, and thereon alleges that at all times herein mentioned, each of the Defendants was the agent and/or employee and/or co-conspirator of each of the remaining Defendants, and in doing the things hereinafter alleged, was acting within the scope of such agency, employment, and/or conspiracy and with the permission and consent of other co-Defendants.

## FACTS COMMON TO ALL COUNTS

10. This claim arises from the investigation, prosecution, conviction, and incarceration of Plaintiff for crimes that he did not commit. Plaintiff served at least seven years in State prison, and was therefore subject to severe limitations and indignities inherent in such settings. Plaintiff experienced fear and anxiety of being imprisoned with the State's most serious and violent offenders. Most fundamentally, Plaintiff lost his youth.

11. Plaintiff's resilience and knowledge that he was innocent allowed him to survive while in jail and prison, but tragically, some of the best years of his life were taken from him based on the unconstitutional acts of officers of the Los Angeles County Sheriff's Department. He was deprived of the rights and privileges our society holds most dear such as freedom and the ability to raise a family and pursue a career.

### Arrest and Wrongful Conviction Due To Fabrication of Evidence

12. This Complaint concerns an officer-involved shooting incident which occurred June 21, 2013 Los Angeles County Sheriff's Department Deputies Caren Mandoyan and Sean Kusiask. On June 21, 2013, Deputies Mandoyan and Kusiak were

on patrol in a marked LASD vehicle. Deputy Mandoyan was driving and Kusiak was the front passenger.

13. On August 14, 2014, Deputy Kusiak testified at the preliminary hearing that he and Deputy Mandoyan conducted a vehicle pursuit of a vehicle which was driving erratically. At the terminus of the pursuit, both he and Mandoyan exited their vehicle with their weapons drawn. The driver and rear passenger started running. Beasley then got out of the vehicle and also ran and then produced a firearm which he began raising and pointed it toward Kusiak's feet area. Kusiak and Mandoyan then fired a total of 11 rounds at Beasley from about 15-20 feet away. Beasley continued to run away but about three to four seconds after the shooting laid face down on the grass behind a tree with his hands outstretched and no weapon in his hand. Kusiak saw a gun in the middle of the street but did not retrieve it. He fired an additional round while Beasley was on the ground and behind the tree.

**Evidence Did Not Support Officer's Claims**

14. The gun in the middle of the street was south of the location where Beasley laid on the ground. The gun was analyzed, and two DNA samples were recovered on the handle of the gun, both of which did not match Beasley nor either of the officers' DNA.

15. Beasley was thereafter charged in a four-count felony complaint with two counts of assaulting a police officer with a firearm, in violation of Penal Code section 245(d)(1); one count of evading a police officer, in violation of Penal Code section 2800.2(a) and one count of possession of a firearm by a felon, in violation of Penal Code section 29800(a)(1). The charging documents also alleged gun, gang, and prior serious felony conviction allegations, in violation of Penal Code sections 12022.53(b), 186.22, (b)(I)(A), 667(a)(1), and 1170.12(a-d). , '

16. On June 17, 2014, Beasley pled no contest to Count One, Assault of a Peace Officer with a Firearm, in violation of Penal Code section 245, (d)(I) and admitted he suffered a prior conviction for residential burglary on January 23, 2009, pursuant to PC

667(a); He was sentenced to a total term of nine years in state prison, i.e. the low term of four years for the assault plus an additional five years for the prior. The remaining charges and allegations were dismissed.

17. As of July 2020 Plaintiff had remained in custody since the date of his arrest and was incarcerated at the California State Prison in Los Angeles County, the California State Prison in Los Angeles County, serving a little more than seven years of his nine-year sentence but was eligible for parole in September of 2021.

18. On July 7. 2020, the Head Deputy District Attorney Larry Droeger was contacted by Plaintiff's criminal counsel and advised that she received information indicating that Deputy Kusiak had testified at a hearing on April 4, 2014 wherein he admitted to intentionally deleting video of a traffic stop. On July 10, 2020, Droeger provided defense counsel with a confidential memorandum to the deputy-in-charge of their Discovery Compliance Unit indicating that an individual had filed a complaint alleging Deputy Kusiak had stolen money during a traffic stop and deleted his video recording of the stop. The memorandum was written on April 7, 2019 and confirmed that Deputy Kusiak had in fact testified at a criminal case denying he stile any money but admitting to deleting the video after defense counsel produced an audio recording of the traffic stop.

19. Thereafter, on July 13, 2020, defense counsel asked that People review the case due to this new information which was not provided to Plaintiff prior to his plea of no contest. Plaintiff's counsel asked the People to consider impeachment information on former Deputy Mandoyan which surfaced after Plaintiff's plea of no contest. Upon review of the case file and potential impeachment information, it was determined that it would be in the interest of justice to resentence Plaintiff to a sentence which would effectively result in his immediate release due to his likelihood of success on a habeas petition to vacate his plea.

20. The Defendant Deputies alleged that at approximately 9:26 p.m., on the date of the incident, the deputies were driving north on Vermont Avenue when they saw a

silver Buick driving erratically in front of them. At 92nd Street, the Buick made a u-turn without coming to a complete stop at the stop sign. The deputies also made a u-turn at 92nd Street and activated their emergency lights.

21. The Buick failed to yield and a vehicle pursuit ensued. During the course of the pursuit, the Buick accelerated to approximately 60 mph on residential streets. The Buick also slowed a number of times and the doors opened, leading the deputies to believe the occupants of the Buick were preparing to abandon the vehicle and flee on foot.

22. They further alleged that the driver and the rear driver's side passenger exited the Buick and fled on foot. They claimed that the front passenger was Mark Beasley, and that he exited the Buick holding a handgun and began to flee west on 102nd Street.

23. They also alleged that as Beasley fled, he turned his upper body to the right toward Kusiak and raised his right hand pointing the handgun toward Kusiak who was approximately 15 feet behind Beasley. Fearing he was about to be shot, Kusiak fired several times at Beasley. Simultaneously, Mandoyan, who was slightly south of Kusiak, fired at Beasley.

24. Los Angeles County Sheriff Deputies Kusiak and Mandouan fired a total of 11 rounds at Plaintiff from about 15-20 feet away. Plaintiff contunued to run away but about three to four seconds after the shooting laid face down on the grass behind a tree wioth his hands outstretched and no weapon in his hand. Defendant Kusiak saw a gun in the middle of the street, bur did not retrieve it. He fired an additional round while Beasley was on the ground and behind the tree. The gun in the middle of the street was south of the location where Beasley laid on the ground. The gun was analyzed and two DNA samples were recovered on the handle of the gun, but did not match Beasley nor either of the officer's DNA.

**Brady Violation**

25. In the landmark case of *Brady v. Maryland,* The United States Supreme

1  Court held that suppression by the prosecution of evidence favorable to an accused. ..
2  violates due process where1the evidence is material either to guilt or punishment."
3  (*Brady v. Maryland* (1963) 373 U.S. 83,18 87.) The duty to disclose such evidence
4  exists even though there has been no request by the accused. (*United States v. Agurs*
5  (1976) 427 U.S. 97, 107). The duty encompasses impeachment evidence as well as
6  exculpatory evidence. (*United States v. Bagley* (1985)473 U~S. 667, 676; *United States*
7  *v. Giglio* (1972) 405 U.S. 150; 155.) And, the duty extends to evidence known only to
8  police investigators and not to the prosecutor. (*Kyles v.Whitley* (1995) 514 U.S. 419, 23
9  438,)

10     26.    There are three essential components of a Brady violation: (1) the evidence
11  at issue must be favorable to the accused, either because it is exculpatory or because it
12  is impeaching; (2) the evidence must have been suppressed by the prosecution, either
13  wilfully or inadvertently; and (3 the evidence must be "material," that is, prejudice must
14  have resulted. *(Brady. supra;* 373 U.S, at p. 87; *Strickler* v. *Greene* (1999) 527 U.S.
15  263, 281-282.) Evidence is material "if there is a reasonable probability that, had the
16  evidence been disclosed to the defense, the result of the proceeding would have been
17  different." *(Kyles. supra,* 514 at p. 33.) In order to comply with *Brady,* therefore, "the
18  individual prosecutor has a duty to learn of any favorable evidence known to the others
19  acting on the government's behalf in the case, including the police." *(Id.* at p. 437.)

20     27.    In this case, the only two individuals other than Beasley who witoessedthe
21  incident were Deputies Mandoyan and Kusiak.

22     June of 2013, Deputy Sean Kusiak conducted a traffic stop on a suspect who
23  alleged that Deputy Kusiak stole his money and deleted evidence from his camera.

24     On April 4, 2014, a motion to suppress hearing was held on an unrelated criminal
25  matter. Prior to the hearing, the prosecutor was provided with audio and a transcript of a
26  traffic stop conducted by Deputy Kusiak and a partner. During the traffic stop, the
27  deputy found a Go Pro Camera and Deputy Kusiak is heard speaking with someone and
28  presumably receiving directions for deleting the video camera. On April 2014, while

testifying at a Pitchess hearing, Deputy Kusiak admitted that he deleted a video from a camera documenting the traffic stop and detention of the suspect.

28. Additionally, on January 15, 2019, the Los Angeles Times published an article indicating that Deputy Mandoyan was fired "in 2016 by then- Sheriff Jim McDonnell in connection with allegations of domestic abuse and stalking. A county appeals board heard evidence and upheld the dismissal.'" Following the current Sheriffs attempts to reinstate Mandoyan, the Los Angeles County Office of Inspector General reviewed the investigation and published a report in July of 2019 setting forth details of Mandoyan's misconduct including the fact that he was actually fired for making false statements and attempting to break into his estranged girlfriend's apartment amongst other actions, some of which occurred as early as 2013. ( *See* Motion for Resentencing)

29. The report further disclosed that Deputy Mandoyan admitted to having a Reaper tattoo which is associated with a Sheriffs' gang / security society out of the South Los Angeles station and made a threatening statement to his girlfriend in a taped telephone conversation on December 11, 2013. Coordinated ink has long been part of a fraternity subculture in the Sheriff's Department, where exclusive groups - with monikers like the Jump out Boys, Grim Reapers, and Regulators - have been accused of glorifying an aggressive style of policing.

30. The impeachment information was not provided to the defense prior to Beasley's plea of no contest June 17, 2014

31. The preliminary information relating to potential impeachment information for both of the People's witnesses against Beasley was not available to him prior to his plea of no context in his criminal case. While the People did not concede that the granting of a habeas petition to vacate Beasley's plea was appropriate at the time absent what could be a lengthy investigation and result in Beasley serving his entire sentence, there appeared to be a reasonable likelihood that he would succeed on a petition for habeas corpus due to the aforementioned evidence.

<u>FIRST CAUSE OF ACTION</u>

**DEPRIVATION OF CIVIL RIGHTS**
*42 U.S.C. § 1983, FABRICATION OF EVIDENCE*
*(Against All Defendants)*

32. Plaintiff hereby realleges and incorporates by reference all previous paragraphs, inclusive, as well as any subsequent paragraphs contained in the Complaint, as if fully set forth herein.

33. Defendant Deputies Mandoyan, Kusiak and DOES 1-10, while acting under color of law deprived Plaintiff of his civil rights, more particularly, his right to due process of law, by providing or causing to be provided false evidence that resulted in deprivation of liberty because they set in motion a reasonably foreseeable chain of events leading to the presentation of false evidence at Plaintiff's preliminary hearing and trial, his conviction and incarceration knew or should have known the evidence was false, and each defendant's conduct was done with deliberate indifference to and/or reckless disregard of Plaintiff's rights or for the truth.

34. Each defendant knew or should have known the evidence was false, and each defendant's conduct was done with deliberate indifference to and/or reckless disregard of Plaintiff's rights or for the truth.

35. The constitutional source against using false evidence is primarily the due process clause of the Fifth and Fourteenth Amendments, and Plaintiff's due process rights were violated by the conduct alleged herein. Plaintiff brings this claim as both a procedural and a substantive due process violation. To the extent that any court were to conclude that the source of Plaintiff's right to be free from concealed and fabricated evidence that led to a false and wrongful conviction, is any constitutional source other than due process (such as the Fourth Amendment or Sixth Amendment right to a fair trial), this claim is brought on those bases as well.

36. Where fabrication of evidence has a meaningful connection to a prosecution, conviction and incarceration, an independent cause of action exists under § 1983 for deprivation of substantive due process under the Fourteenth Amendment, despite the existence of probable cause. (*Halsey v. Pfeiffer*, 750 F.3d 273, 292-93 (3rd Cir. 2014);

see also Spencer v. Peters, 857 F.3d 789, 801 (9th Cir. 2017)(rejecting the contention that a plaintiff must "prove that, setting aside the fabricated evidence, probable cause was lacking").)

37. Defendants were each jointly and severally responsible to not use false evidence against Plaintiff. Each engaged in, knew or should have known of the unconstitutional conduct alleged herein and failed to prevent it, which each had responsibility to do, and each ratified, approved or acquiesced in it.

38. As a result of the defendants', and each of their, violations of Plaintiff's constitutional right to not have false evidence turned over to the prosecutors handling this case and ultimately to the defense, Plaintiff was damaged as alleged above.

39. Due to the conduct of Defendants, and each of them, Plaintiff has been required to incur attorneys' fees, and will continue to incur attorneys' fees, all to Plaintiff's damage in a sum to be proven at trial and recoverable pursuant to 42 U.S.C. §1988.

40. In acting as alleged herein, Defendants, and each of them, caused Plaintiff severe physical and emotional injuries, and caused Plaintiff other damages, all in an amount to be determined at the time of trial.

41. The individual Defendants named herein acted with a conscious disregard of Plaintiff's rights, conferred upon him by Section 1983, Title 42 of the United States Code, the Fourth and Fourteenth Amendments to the United States Constitution and California Civil Code Section 3333, by virtue of ensuring Plaintiff was arrested, subject to improper police investigation, and subject to prosecution for crimes he did not commit. Defendants had an interest in seeing to it that Plaintiff was prosecuted for crimes he did not commit for purposes of punishing and harming Plaintiff and for purposes of asserting that the Defendants had apprehended the robbery suspect. Such conduct constitutes malice, oppression and/or fraud under 42 U.S.C. § 1983 and California Civil Code Section 3294, entitling Plaintiff to punitive damages against the individual Defendants in an amount suitable to punish and set an example of.

# SECOND CAUSE OF ACTION
## BASED ON BRADY VIOLATIONS
*42 U.S.C. § 1983*
*(Against All Defendants)*

42. Plaintiff hereby restates and incorporates by reference the foregoing paragraphs of this Complaint as if set forth in full at this point.

43. Defendants County of Los Angeles, Caren Mandoyan, Sean Kusiak, and DOES 1-10, while acting under color of law, deprived Plaintiff of his civil rights by violating his right to have material, exculpatory and impeachment information as required by *Brady v. Maryland, 373* U.S. 83 (1963) (hereafter *Brady Information)* turned over to the prosecutors handling his case so that it could in turn be provided to the Beasley defense.

44. The actions of each defendant in withholding evidence were done with deliberate indifference to or reckless disregard for Plaintiff's rights or for the truth.

45. The Brady violations asserted herein encompass, but are not limited to: Failure to disclose material, exculpatory and impeachment information regarding prior acts of

46. The constitutional source of the obligation to provide Brady information is primarily the due process clause of the Fifth and Fourteenth Amendments, and Plaintiff's due process rights were violated by the conduct alleged herein. Plaintiff brings this claim as both a procedural and a substantive due process violation. To the extent that any court were to conclude that the source of Plaintiff's right to *Brady information* is a constitutional source other than due process (such as the Fourth Amendment or Sixth Amendment right to a fair trial), this claim is brought on those bases as well.

47. Defendants County of Los Angeles, Caren Mandoyan, Sean Kusiak, and DOES 1-10 were each jointly and severally responsible to produce *Brady information* to Plaintiff. Each engaged in, knew or should have known of the unconstitutional conduct alleged herein and failed to prevent it, which each had a responsibility to do,

1  and each ratified, approved, or acquiesced in it.

2  48.  In acting as alleged herein, Defendants, and each of them, caused Plaintiff severe physical and emotional injuries, and caused Plaintiff other damages, all in an amount to be determined at the time of trial.

49.  As a result of each Defendants', and each of their, violations of Plaintiff's constitutional right to have *Brady* i*nformation* turned over to the prosecutors handling Mr. Beasley's case, Plaintiff was deprived of his above described civil rights, and is entitled to damages including, but not limited to general and punitive damages and attorney's fees under 42 U.S.C. § 1988.

### THIRD CAUSE OF ACTION
### BASED ON *MONELL VIOLATION*
### 42 U.S.C. §1983
### (Against Defendant County of Los Angeles)

50.  Plaintiff restates and incorporates by reference the foregoing paragraphs of this Complaint as if set forth in full at this point.

51.   .Plaintiff is informed and believes and thereon alleges that, during all or portions of the period relevant to this case (1984 to 2017),  Defendant County of Los Angeles, by and through the Los Angeles County District Attorney's Office, with deliberate indifference, and conscious and reckless disregard to the safety, security and constitutional and statutory rights of criminal suspects and defendants, including Plaintiff)  had no established or clear administrative system in place, no stated, written or adequate policies, and c) no or inadequate training and supervisions regarding, *inter alia*, the following issues:

    a. ensuring that the police department or police officers with which the District Attorney's Office was working provided all exculpatory evidence gathered during an investigation of a case presented to the District Attorney's Office for prosecution, as numerous cases over the years made clear was its obligation.

    b. ensuring that the police department or police officers with which the

1 District Attorney's Office was working provided its full investigative material and
2 that material is actually reviewed by an appropriate Deputy DA.
3 c. ensuring that exculpatory evidence was not buried in files provided to the trial
4 attorney handling the case by the police department or police officers with which
5 the District Attorney's Office was working, and/or by members of its Office.
6 d. ensuring that information in related court cases relevant to a case being
7 prosecuted was provided by the police department or police officers
8 with which the District Attorney's Office was working to the trial attorney
9 prosecuting that case and/or was disclosed to the defense.
10 e. ensuring that exculpatory information in related court cases relevant to a case
11 being prosecuted was provided to the trial attorney prosecuting that case by the
12 police department or police officers with which the District Attorney's Office was
13 working and/or was disclosed to the defense.

14 52. The customs, policies, practices, failures, actions and inactions of theLos Angeles District Attorney's Office elaborated above were or should have been known to the policy makers responsible for the Los Angeles District Attorney's Office and occurred with deliberate indifference to either the recurring constitutional violations elaborated above, and/or to the strong likelihood that constitutional rights would be violated as a result of failing to adopt and implement systems, policies, training, supervision or discipline in areas where the need for such things to occur was obvious. Given the long and recurring history elaborated above, the Los Angeles District Attorney's Office and its policy makers were on notice of these deficiencies and failures.

53. The customs, policies, practices, failures, actions and inactions of the Los Angeles District Attorney's Office elaborated above were so closely related to the deprivation of the plaintiff's rights as to be a moving force that caused the constitutional violations alleged herein.

54. . As a direct and proximate result of Defendant County of Los Angeles' acts

and omissions, condoning, encouraging, ratifying and deliberately ignoring the pattern and practice of district attorney's acts and omissions alleged above, Plaintiff sustained injury and damage to be proved at trial.

55. As a result of defendants', and each of their, violations of Beasley's constitutional rights as set forth herein, he was damaged as alleged above.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for judgment against Defendants as follows:

a. For general and special damages in an amount according to proof at trial;
b. For medical and related expenses according to proof at trial;
c. For costs of suit incurred herein;
d. For attorneys' fees incurred herein, as provided by law;
e. For punitive damages against the individual Defendants in their individual capacities in an amount according to proof at trial; and
f. For such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs hereby demand that a jury be impaneled for the trial of this matter.

DATED: August 18, 2022                    Respectfully submitted,

**THE COCHRAN FIRM CALIFORNIA**


By:    /s/ *Brian T. Dunn*

BRIAN T. DUNN
EDWARD M. LYMAN
TIMAIAH SMITH
*Attorneys for Plaintiffs*